Argued and submitted September 28, 1984, reversed and remanded January 23, 1985

ARAOZ,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(6-2801-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; CA A30825)

694 P2d 578

Terry Ann Rogers, Legal Aid Service, Portland, argued the cause and filed the brief for petitioner. With her on the briefs was Amy Veranth, Legal Aid Service, Portland.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Lynn Toro, Certified Law Student, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner seeks review of a final order of the Adult and Family Services Division that upheld its branch office's action in refusing to replace her December, 1982, food stamp allotment, which was stolen. The issue is whether, for the purposes of replacing stolen food stamps under OAR 461-84-045, certified delivery to the food stamp recipient's residence is the equivalent of "receipt" by her. On the evidence here, we conclude that it is not, and we reverse and remand.

Petitioner qualified to receive food stamps in November, 1982. Stamps were to be sent to her monthly by certified mail. Other than petitioner herself, the only person authorized to sign for her stamps was her husband. He was designated as an "Authorized Representative" on her food stamp application.

Petitioner had permitted one Trujillo, a friend of her husband, to reside in her home. Her December food stamps were delivered on December 16, 1982. On that day, she was in the hospital. Trujillo signed the certified mail receipt and received the stamps. He moved out of petitioner's home the same day, taking the stamps with him. AFSD's branch office refused to replace the stamps.

AFSD found, in relevant part:

"I [Petitioner] and her husband * * * are of Cuban descent and speak very little English. II [Petitioner] and [her husband] have been receiving food stamps in her name since November 1, 1982. * * * IV Also residing at their [home] was Mr. Louis Trujillo, a friend of [petitioner's husband]. V Only [petitioner] and [husband] were listed as authorized representatives to receive the food stamps. VI Since November 1, 1982, the food stamps were delivered by means of certified mail. VII On December 16, 1982, the food stamps were delivered to [petitioner's] home and signed for by Mr. Trujillo. VIII Mr. Trujillo refused to give the food stamps to Ms. Araoz. IX On January 11, 1983, at the Northeast Portland Branch Office of Adult and Family Services, in front of the food stamp worker, Ms. McDaniel, Ms. Araoz accused Mr. Trujillo of stealing her food stamps. He did not deny that."

AFSD concluded:

"It is the position of Ms. Araoz that the branch office was negligent through its agent, the Post Office, by allowing the

coupons to be received by a person other than those listed as authorized representatives. It is further argued that in doing so the food stamps were not delivered to the 'household.' The household in this instance being the 'food stamp household.' There is no question that the food stamps were delivered to the proper address. There is further no question that the food stamps were received and signed for by a person who was authorized to be living in that household.

"It is beyond reason to conclude that the United States Post Office is the agent of Adult and Family Services for the purpose of assuring that delivery is made to a limited number of persons.

"In denying replacement, the branch office relied on the fact that the coupons were delivered to Ms. Araoz's home and subsequently stolen. That reliance is a reasonable interpretation of what did happen."

AFSD is authorized to promulgate rules regarding the issuance and distribution of food stamps. ORS 411.816. OAR 461-84-045 provides in relevant part:

"In the event food coupons are not received in the mail, a replacement allotment will be made when it has been verified that the coupons were mailed and not returned to Sacramento Service and Development Corporation (SSDC), or when there is proof of household disaster * * *. Coupons stolen or lost after receipt shall not be replaced. ATP cards shall be replaced when they are reported stolen or destroyed."

AFSD's manual interprets OAR 461-84-045 as requiring the denial of replacement of food stamps if the stamps are stolen after they have been "delivered" to the recipient:

"*If certified mail is reported not received,* the BO [Branch Office] should call the post office to verify delivery if possible (depending on cooperation from local post office). The BO must give the local post office the certified mail number. The certified number can be obtained from the WFS 3914R-H or by calling the food stamp program unit if the certified mail was sent under another branch code. *If delivered do not replace coupons * * *.*" AFSD Manual V1-X-C-2-F. (Emphasis supplied.)

There is no suggestion here that any fraud exists attributable to petitioner; indeed, AFSD's findings state that her food stamps were stolen.

██ We interpret the word "receipt" in OAR 461-84-045

to mean either that the food stamps were received by petitioner, by her "Authorized Representative," or, at a minimum, by some member of her "food stamp household." That interpretation is not inconsistent with 7 CFR § 273.1(f)(1)(ii), which authorizes food stamps to be obtained only by a member of the "food stamp household or an authorized representative." Trujillo was not a member of petitioner's "food stamp household."

Reversed and remanded for reconsideration.